America, Mr. Maloney. May it please the court. My name is Matthew Maloney. I'm a lawyer with Life Insurance Company of Nort America, and I represent the plaintiff, Helen Scott Scanlon. This court can definitively reach a firm conviction that the district court committed a veritable avalanche of five clear errors. First, Scanlon's doctors all agreed that he was disabled, a point that the district court misunderstood. Second, Scanlon's disability claim is supported by a functional capacity evaluation, the results of which were 92.9% valid and which found him to be incapable of performing sedentary work. Third, the district court gave undue weight to the extreme opinions of Lyna's reviewing doctors, who asserted that Scanlon did not require any medical restrictions whatsoever. Fourth, the district court erroneously dismissed the Department of Veterans Affairs determination that Scanlon is 100% disabled. And finally, the district court ignored Scanlon's comorbid sleep disorder. The first clear error was its finding that none of Scanlon's treating doctors precluded him from performing the duties of his occupation. That is simply not true. Dr. Syed, Scanlon's pain management physician, endorsed the FCE results as an accurate representation of Scanlon's limitations secondary to pain. Mr. Maloney, didn't Dr. Syed though have expressed some reservations with regard to the reliability of some of those reports of pain? Dr. Syed endorsed Scanlon's reports of pain. It was Dr. Padillard who attempted to discredit the reports of pain on Lyna's behalf. Wasn't there some language in the functional capacity test that talked about whether or not some of the reports of pain may have been overstated? So, for example, that based upon Mr. Scanlon's self-reporting of pain, that based upon those reports, that that would lead one to conclude or might lead one to conclude that he couldn't take care of himself. And yet, Mr. Scanlon stated that he cooked for himself, he shopped for himself, that he could perform some regular duties or responsibilities just to take care of himself. Yes, Your Honor, that language is in the functional capacity report. However, Dr. Elsheikh, who conducted the exam, also found that Scanlon was reliable for 75% of the time, which indicated that pain was a limiting factor in the exam. And we don't dispute that. But isn't the court, the trial court at least, entitled to make its own determination of how much weight to give the FCE report given the 25% qualification that was provided by Mr. Scanlon's physician? The district court is entitled to find facts under Rule 52, which this case was decided under, but that finding was clearly erroneous because the exam was 92.9% valid. This is some of the problem I have with the record in this case because it was decided on the papers and we don't have any testimony, any deposition helping us to understand this 75-25. I mean, for example, what if doctors in the industry say it's normal to have pain reports, you know, between 70 and 90% reliable? We consider that just fine. That's standard. Perhaps the testimony would be 75% is woefully inadequate, you know, we can only place reliability, we only have confidence if the percentage is 90, but we don't know any of that. You know, do we need to ask the district court to further develop the record? I mean, another example is you want us to disregard the statement in the RFC that Scanlon would never miss work. You say that's a mistake, but we don't have any testing of that in the record below, and I want to know why we should accept your explanation, particularly when we have circuit case law that says we shouldn't resolve doubts in the evidence in favor of the claimant at this point. And so I'm just wondering, do we need more development than what was really here below, even though it seems quite voluminous? No, Your Honor, we do not need any additional development, because Scanlon's treatment records indicate that over the course of multiple years, he consistently reported pain through his back and neck, as well as radicular symptoms. And there is case law in this circuit that says that it's improper to render credibility determinations without examining the patient. But that's exactly what Leina did here. They simply speculated that he was incredible, despite all of his doctors believing he was credible, and his consistent reports of pain throughout his treatment records. Although we are limited in our review by Rule 52, the district court was supposed to conduct de novo review of the insurance decision. Did the district court apply the correct standard, or did it just sort of defer to the insurance determination? The district court indicated that it did apply the de novo standard, but its account of the evidence doesn't suggest that. In fact, it demonstrates that it simply applied the arbitrary and capricious standard in blindly accepting the reviewing doctor's opinions without ever examining Scanlon. In light of those FCE results and the treating doctor's opinions, it is simply incredible that the district court afforded substantial weight to Leina's non-examining doctors, both of whom merely speculated that Scanlon did not require any restrictions whatsoever. That is simply inconsistent with the treatment records and the treating physician's opinions. However, even assuming that the opinions of Scanlon's doctors are canceled out by those of Leina's doctors, the VA's disability determination breaks that tie. The VA independently determined that Scanlon is incapable of securing or maintaining substantially gainful employment. While the district court believes Scanlon's VA award was largely grounded in psychiatric issues, that is not the case. The VA must assess chronic sleep impairments within the rating criteria for mental disorders. Therefore, when the VA assessed Scanlon's disability in April of 2019, it based this decision on a 70% disability for major depressive disorder with and inclusive of insomnia. To what extent did he rely on psychiatric conditions? The court seemed to have concluded that he completely disclaimed mental health issues. That didn't seem correct, but is it? Your Honor, we did not claim disability on strictly mental disorders. Scanlon's disability is based on his pain resulting from his spinal impairments as well as his sleep disorder. The VA also awarded at that time, in April of 2019, an additional 70% combined for degenerative arthritis of the spine and bilateral lower extremity radiculopathy. So, if anything, the district court's assertion that it was largely grounded in psychiatric issues is not true. It was 70% for major depressive disorder with insomnia and 70% for his combined physical impairments. Dr. Clark subsequently determined on behalf of the VA that Scanlon's significant limitations in daily functioning result from non-restorative sleep and excessive fatigue, not depression alone. That subsequent finding makes clear that the VA's 70%, which was ultimately bumped up to combined 100%, was for mostly insomnia. Ms. Salek determined on behalf of the VA from a vocational perspective that Scanlon's insomnia and spinal impairments justified a 100% rating for total disability. So, you're saying that when the VA states major depressive disorder with insomnia, that actually it was the insomnia that was the dog and not the tail? That's correct, Your Honor, and that's what Scanlon's treatment records suggest. And about those treatment records, the VA records and some of the treatment records post-date the time that Mr. Scanlon left his employment by sometimes, well, by at least a year and sometimes more. Isn't that correct? That's correct, but this court has explicitly held that the relation… I guess my question is, isn't the district court entitled to consider the time lapse between the time that Mr. Scanlon quit his job and when these medical examinations were done for the VA, which the VA was done almost, I think, nearly three years after he left his job, in trying to determine what proper weight to give those particular medical records? The district court was entitled to assign weight to the evidence. However, in Holmstrom, this court explicitly stated that an appellant could never… Excuse me. The appellant could never seek to gain disability benefits because they…if they didn't already undergo that testing prior to their application for benefits. So if you get an initial decision that is unfavorable to the claimant, they have to go out and seek new evidence. They can't create new evidence in the past. They need to just provide what they have going forward to try and establish disability. Oh, no, I understand. I understand that Mr. Scanlon's ability to…had the ability to augment the record with medical, I guess, diagnoses and treatment that he received after the decision. My question was really just, you know, the district court was allowed to consider how much time had passed in deciding what weight to give the particular medical records. It was entitled to consider that, yes, but in light of Holmstrom, its ultimate conclusion regarding those findings was improper. Unless Your Honors have any additional questions, I see that my time is up. Thank you so much. Thank you. Okay. Mr. Pedersen, Peter Pedersen, yes? Correct, Your Honor. May it please the Court, appearing on behalf of Life Insurance Company of North America, or LINA for short, the district court conducted a trial on a stipulated record and rendered its own independent decision about whether the claimant, Scott Scanlon, was entitled to disability benefits under McKesson Corporation's benefit plan. You know, your brief places a great emphasis on the 25% chance that pain reports are not accurate, but that means there's a 75% chance that they are accurate. So, why would that not be enough to meet the preponderance standard? I mean, for instance, if the Court had failed in Mr. Scanlon's favor, that would be enough to uphold the result, wouldn't it? Your Honor, the reliability of pain testing figure centrally in the district court's weighting and evaluation of the functional capacity evaluation, and there were numerous reliability of pain tests embedded in the functional capacity evaluation conducted by Dr. El-Sheikh. One of the basically five reliability testings consisted of asking Mr. Scanlon to rate his pain on the Acupro functional pain scale after testing, and Dr. El-Sheikh noted that his responses to the Acupro functional pain scale questions given during testing were unreliable one quarter of the time, and that's the pie chart that's shown on the second or third page of the FCE. In addition to the Acupro functional pain scale testing, Dr. El-Sheikh separately administered four other gauges of reliability, the Oswestry low back disability questionnaire, the Oswestry neck disability questionnaire, the McGill pain questionnaire, and Waddell signs. And on all four of these distinct gauges, Mr. Scanlon gave responses indicating the potential for unreliable pain reports, and Dr. El-Sheikh found that it may warrant further reliability of pain testing, which was not done. And to discuss one of those tests in particular, which I think is particularly important, and Judge Lee commented on it earlier, on Mr. Scanlon's responses to the Oswestry test, his scores indicated a severe disability that impacted all aspects of life. It impacted and affected negatively the ability to travel, have personal relations, and perform personal care. Now, a severe disability impacting Mr. Scanlon's ability to perform personal care is completely at odds with the record as a whole. I have to stop you. Mr. Pedersen, could you answer my question? I would really appreciate it. Yes, so 25% of the questions asked during the objective functional testing had responses that indicated that the pain was overstated compared to Dr. El-Sheikh's observation of the patient, biomechanical readings like pulse, the mechanics of the way he was performing. I'm going to stop you again because it's so easy to answer the question. If the court had found in Scanlon's favor, would that have been enough to uphold the result? In other words, 75% to 25%. That's all I want to hear. If the court had held that pain responses that were reliable 75% of the time indicated that the FCE was valid, would that have been sufficient for the court to find that the FCE was an accurate representation of the claimant's work capacity? Is that your Honor's question? My question basically was this. You have really put a lot of emphasis on that 25% number that the pain reports aren't accurate. But what that means is 75% that it is, that it is accurate. And I want to know why that wouldn't meet the preponderance standard. Because if Judge Norgel had found in Scanlon's favor, seems to me that would have been enough to uphold the result, right? So the opposite should be so. I understand your question now, Judge Rovner, and I apologize for skating over it initially. Go ahead. Judge Norgel permissibly read the FCE as not establishing disability, despite 75% of the Occupro pain questions being answered reliably, because the four other gauges indicated unreliable pain reporting. And even while he was unreliably reporting his pain on 25% of the Occupro pain scale questions and the four separate gauges, he still demonstrated very significant functional abilities and endurance. And in particular, even while unreliably and overstating his pain responses, he demonstrated the ability to frequently walk, frequently perform fine manipulation, frequently grasp objects, and frequently squat. In addition, he demonstrated the lifting abilities at the medium physical demand level of work. He could frequently squat lift 29 and a half pounds. Yeah, yeah, but he's a systems administrator. And there was a finding he could lift, squat, so forth, so on. But there was also a finding that he could only sit and stand up to six hours a day and only on shifted non-daytime work. So how is it that he can perform the job responsibilities, the material job duties of a systems administrator? Two important points on that, Your Honor. Number one, the psychologist who was treating the delayed sleep-wake phase disorder was Dr. James Wyatt of Rush University. He never found that Mr. Scanlon had any neurocognitive impairments that would preclude work. He said that he recommended shifted hours to 3 p.m. to 3 a.m. because Mr. Scanlon had difficulty going to sleep and waking up on a schedule consistent with daytime work. And Dr. Wyatt thought that during the shifted hours, Mr. Scanlon would achieve normal work performance. He also indicated that he might have neurocognitive impairment if forced to work outside of those recommended hours. But in the actual event, he wasn't required to work outside of those hours because McKesson granted the shifted work hours. Which the district court says we need to ignore. The district court said that the accommodations alone did not signify a lack of disability, but that he needed to consider both the accommodation request by Dr. Wyatt and the accommodations granted by McKesson in assessing the question under the benefit plan, which is whether his medical conditions prevent him from performing the material duties of his occupation. I want to tell you one other thing that is bothering me here. The defendants hired experts said only that the F.C.E. showed a potential for Scanlon exaggerating reports of pain. Yet the district court seems to have entirely dismissed the F.C.E. based on this potential. So what's your best argument that that was a plausible reading of the record? The district court noted that the consulting occupational medicine physician himself saw the Waddell signs and the McGill questionnaire as indicating unreliable pain reporting. And the district court further noted that the case law recognizes that the Waddell sign can be used to support an inference of malingering or pain overstatement. But ultimately the district court plausibly and reasonably interpreted the F.C.E. as not establishing disability because there were numerous unreliable pain reports given, according to Dr. Elsheikh himself, who said that further reliability of pain testing may be warranted and further reliability testing was never done or submitted. And that, under Doris v. Unum, cuts against plaintiff's case on the district court's de novo review of a benefit determination where the fiduciary did not have discretionary authority. And in addition, the district court noted that he demonstrated truly extensive functional, physical, and endurance capabilities during this test, even while he was overstating his pain and failing to report it reliably. He was assessed to be able to work six hours and 43 minutes a day. The sole basis for the finding that he couldn't handle full-time sedentary work was that he supposedly was limited to two hours and 50 minutes of sitting. But that finding was based only on the observation of him sitting for 40 minutes and the questions Dr. Elsheikh asked of him. Those responses were the district court could reasonably and permissibly find that that sitting limitation, which was the linchpin of the ultimate conclusion, was undermined by his failure to provide reliable responses to pain questions on both the four separate gauges plus the Occupro functional pain scale tests that were given throughout functional testing. So my time is up, and we would respectfully submit that the record provides reasonable and plausible support for the district court's judgment and that affirmance is in order under the clear error standard of Rule 52. Thank you so much. Thank you, Your Honor. In the three minutes. I just have two brief points on rebuttal. First, opposing counsel seems to suggest that the burden was on Scanlon to seek or undergo additional functional capacity evaluation testing based on the line in the functional evaluation report that additional testing may be warranted. Lina possessed the power under the policy at issue to send him for an FCE. If they didn't believe the results or his credibility, they could have sent him for another one, but they didn't. Second, even assuming that the district court did not clearly err in rejecting the opinions of Scanlon's doctors, the 92.9% valid FCE results, the VA's 100% disability rating, the district court still ignored his independently disabling sleep conditions. In fact, the district court merely concluded that Scanlon can perform the active physical tasks that his sedentary job requires. That finding ignored key non-physical duties required of Scanlon's cognitively demanding occupation, which include full-time work and around-the-clock management of the position's day-to-day operations, overtime work, a rotating 24-7 on-call requirement, and the inherently time-sensitive nature of promptly resolving spontaneous IT issues that arise. Those material duties are simply incompatible with Scanlon's inability to work within normal hours, his constant fatigue, decreased cognition, and the restriction that he work at his own pace. For those reasons, we respectfully request that the court reverse the district court's opinion. Thank you. Thank you very much to both of you. Thank you. Mr. Maloney, Mr. Pedersen, case will be taken under advisement.